No. 01-556

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 146

STEVEN W. SPAIN, et al.,

        Petitioners and Appellants,

   v.

MONTANA DEPARTMENT OF REVENUE,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                      In and For the County of Gallatin,
                      Honorable Mike Salvagni, Judge Presiding

COUNSEL OF RECORD:

        For Appellants:

                Michael J. San Souci, Attorney at Law, Bozeman, Montana

        For Respondent:

                Charlena Toro, Special Assistant Attorney General and Tax Counsel,
                Helena, Montana

                            Submitted on Briefs:  February 14, 2002

                                      Decided:  June 27, 2002

Filed:

               _____
                           Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Steven W. Spain, individually and doing business as Northwest Rocky Mountain Construction, Inc. (collectively Northwest), and Kenneth D. Ehret, individually and doing business as KDE Construction (Ehret), appeal from the Eighteenth Judicial District Court's order affirming the State Tax Appeal Board's determination that certain Northwest workers, including Ehret, were employees rather than independent contractors for purposes of state income tax withholding.  We affirm.

¶2    We re-state the issues on appeal as follows:

¶3    (1) Did the District Court err in upholding the State Tax Appeal Board's determination that the Northwest workers in question were employees rather than independent contractors?

¶4    (2) Did the District Court err in holding that the Department of Revenue did not exceed its statutory authority in classifying Ehret as an employee?

¶5    (3) Did the District Court err in holding that § 15-30-203(1), MCA, and Rule 42.17.120, ARM, do not constitute a form of unconstitutional dual taxation?

                    FACTUAL AND PROCEDURAL BACKGROUND

¶6    Northwest is a Wyoming Subchapter S Corporation engaged in general contracting.  It commenced operations in Montana in 1987. Steven W. Spain (Spain) is the president and sole shareholder of Northwest, and his wife, Kimberly Spain, is secretary-treasurer.

¶7    Ehret performed construction services for Northwest.  On appeal, the parties dispute whether he performed the services as a

2

Comment [COMMENT1]: Dor fof 1

Comment [COMMENT2]: Dor fof 1

Comment [COMMENT3]: Dor fof 2

Northwest employee or as an independent contractor. However, it is undisputed that, in 1988, Ehret applied for and received unemployment benefits. Subsequently, the Montana Department of Labor and Industry sought to have Northwest establish an unemployment insurance account, but Northwest refused. Ultimately, the Board of Labor Appeals determined that Ehret was a Northwest employee. Northwest appealed this determination, and on October 11, 1989, the District Court affirmed the Board of Labor Appeals' decision. It declared that Ehret and others "similarly situated" were not independent contractors for purposes of their employment with Northwest.

¶8 In December 1990, the Department of Revenue (DOR) conducted a computer cross match indicating that Northwest had reported wages to the Unemployment Insurance Division of the Department of Labor and Industry. However, no corresponding account could be found for Montana withholding tax purposes.

¶9 As a result, DOR agent Jeff Lapham (Lapham) conducted a field audit of Northwest covering tax years 1987-1991. He examined Northwest's corporate check register to obtain Northwest's earnings information and the specific dates and amounts of compensation paid to workers and compared this information with various workers' individual income tax returns. He also considered this one-paragraph Work Contract that Northwest workers were required to sign:

> I, [Name of Worker], working as a Contract Laborer for **Northwest Rocky Mountain Construction**, am responsible for all insurance on myself and for all injuries occurring on the job. I will file my own Social Security and

Comment [COMMENT4]: Dor fof 3

Comment [COMMENT5]: Dor fof 4

Comment [COMMENT6]: Dor fof 5

Comment [COMMENT7]: Dor fof 6

Comment [COMMENT8]: Dor fof 6

>Withholding Taxes.  I will not hold **Northwest Rocky Mountain Construc-tion** or Steve Spain liable for any injuries or accidents that may occur. [Emphasis in original.]

While the workers signed the Work Contracts, Spain at times did not sign them.

¶10  Based on his investigation, Lapham concluded that some of Northwest's workers were employees and some were independent contractors.  With regard to those workers deemed employees, Lapham determined that Northwest had failed to report their income to the DOR for state withholding tax purposes and failed to pay withholding taxes for these workers from 1987-1989 since, on June 25, 1990, Northwest registered with the DOR for purposes of state withholding tax payments. Consequently, Lapham submitted a notice of assessment to Northwest for tax and interest due in the amount of $15,132.58.

¶11  Lapham also issued a notice of assessment to Ehret because, although he was deemed an employee for unemployment insurance purposes for the years 1987-1989 pursuant to the previous District Court determination discussed above, he nevertheless filed income tax returns as an independent contractor for those years.  Concluding that Ehret was an employee and, in any event, failed to produce adequate business records substantiating his claimed business expense deductions, Lapham disallowed the deductions and assessed Ehret in the amount of $2,207.63, including interest due.

¶12 Following receipt of the DOR assessment, Northwest submitted eighteen sworn Declarations to Lapham from workers describing the services they performed for Northwest.  The Declarations also contained statements similar to the following:

5

During these periods I considered my relationship with Northwest to be that of builder/independent contractor, since I furnished my own tools at the jobsite, retained control and discretion over the manner and details of my work, without direct supervision from Mr. Spain or anyone under his control, and I also performed similar work for various other builders and general contractors during the years in question. Apart from the above project(s), I did no further work for Northwest during the years in question.

¶13    Additionally, the Declarations contained language to the effect that the workers conducted business under their own trade names, maintained their own medical and disability insurance and paid the appropriate taxes on any and all amounts received from Northwest during the period in question.

Comment [COMMENT13]: Declarations, dor fof 9

¶14    Following receipt of the Declarations, Lapham compared them with the workers' Montana income tax returns. In some cases, Lapham determined that some of the workers that he had previously deemed employees in the audit were indeed independent contractors. In other cases, Lapham determined that the workers' statements were inconsistent with the manner in which they filed their Montana tax returns.

Comment [COMMENT14]: Dor fof 10

¶15    To obtain more information, Lapham sent Worker Relationship Questionnaires to five individuals and established appointments to review them with the individuals. Spain, Ehret and a worker we will refer to as "Worker A" returned the Questionnaires. Only Worker A attended the review appointment with Lapham. From Ehret's Questionnaire and Worker A's Questionnaire and interview, Lapham determined that they, and similarly-situated workers, were employees of Northwest.

Comment [COMMENT15]: Dor fof 10

Comment [COMMENT16]: Dor fof 11-13

6

¶16     Lapham submitted a revised assessment to Spain deleting the workers that Lapham determined to be independent contractors upon further review.  The assessment remained the same for those workers who Lapham continued to deem as Northwest employees and for Ehret.

¶17 In May 1993, Northwest and Ehret filed an administrative appeal with the DOR, and the DOR held a hearing in which Lapham was the primary witness.

¶18 After the hearing, the hearing officer issued extensive findings of fact and conclusions of law. He determined that the workers in question were employees rather than independent contractors and upheld the DOR's assessments against Northwest and Ehret. Northwest and Ehret appealed the hearing officer's decision to the State Tax Appeal Board (STAB) on the DOR record. Thus, as agreed to by the parties, the Board's hearing was limited to oral argument. The Board affirmed the hearing officer's decision.

¶19 Northwest and Ehret petitioned for judicial review in the Eighteenth Judicial District Court, Gallatin County. The District Court reviewed the record and affirmed the STAB's findings and conclusions of law determining that the workers at issue were employees of Northwest and addressed Northwest's constitutional claims. Northwest and Ehret now appeal the District Court's decision.

STANDARD OF REVIEW

¶20 Where, as here, both facts and legal conclusions are disputed, two standards of review are appropriate. We review an administrative agency's findings of fact to determine whether the findings are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. Section 2-4-704(2)(a)(v), MCA; *State Personnel Division v. Child Support Investigators*, 2002 MT 46, ¶ 18, 308 Mont. 365, ¶ 18, 43 P.3d 305,

8

Comment [COMMENT17]: Bd fof 27

Comment [COMMENT18]: Stab fof 27

¶ 18. Our standard of review of a question of law is whether the conclusion is correct. *Phoenix Physical Therapy v. Unemployment Insurance Div.* (1997), 284 Mont. 95, 100, 943 P.2d 523, 526.

DISCUSSION

¶21 (1) Did the District Court err in upholding the State Tax Appeal Board's determination that the Northwest workers in question were employees rather than independent contractors?

¶22 Northwest claims that the workers the STAB deemed as employees were independent contractors. The two-part test to determine whether an individual is an independent contractor is found at § 39-51-201(14), MCA (1987):

> (1) "Independent contractor" means an individual who renders service in the course of an occupation and:
> (a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
> (b) is engaged in an independently established trade, occupation, profession, or business.

¶23 Under this test, the crucial question is whether or not an employer has a right of control over a worker. To determine this, we have developed the following four-part control test: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Walling v. Hardy Construction* (1991), 247 Mont. 441, 447, 807 P.2d 1335, 1338. A finding that an individual is an independent contractor demands "'a convincing accumulation of these and other tests,'" while a finding of employee status "'can if necessary often be solidly proved on the strength of one of the four items.'" *Walling*, 247

9

Mont. at 447, 807 P.2d at 1338-39 (citing *Sharp v. Hoerner Waldorf Corp.* (1978), 178 Mont. 419, 425, 584 P.2d 1298, 1301-02).

¶24 In its Findings of Fact, the STAB recounted Lapham's testimony at the DOR hearing. Lapham testified that at the opening audit conference, Northwest representatives, including Spain, informed him that the company sometimes supplied its workers with air compressors, air guns, lumber, materials, nails, saws and cords while the workers only supplied their own small hand tools. Based on Lapham's testimony, the STAB found that contracts were not issued for any particular construction job, and there were no bid sheet proposals submitted by workers performing services.

¶25 Furthermore, the STAB findings included Lapham's explanation of how he considered the workers' tax returns in determining whether they were employees or independent contractors. He stated that workers who filed a Schedule C tax return reporting business income and expenses greater than that earned at Northwest were deemed independent contractors. On the other hand, if workers' Schedule C reported income was equal to that earned at Northwest, he viewed the workers as employees of Northwest. He also viewed workers as employees if they reported their income from Northwest as wages on their tax returns.

¶26 The STAB outlined how Lapham found many inconsistencies between the Declarations Northwest submitted and the Worker Relationship Questionnaires and tax returns. For instance, some "independent contractor" incomes were reported as wages; workers were paid by the hour but claimed they worked on a job-to-job

10

basis; and workers claimed they worked uninterruptedly only for Northwest yet also claimed they worked for other builders. The STAB found there were other conflicting statements as to the presence of supervision and control, the length of employment, the completion of records, the company's right to discharge and the workers' freedom to quit their job, and the nature and amount of communication between Northwest and its workers.

¶27 The STAB held that Ehret and Northwest failed to rebut the DOR's evidence. Regarding Ehret, the STAB cited Rule 42.17.101(1), ARM, for the proposition that a determination that an individual is an employee for purposes of unemployment compensation establishes that person as an employee unless facts can be shown to the contrary. The STAB noted that in a previous 1988 determination, a district court ruled that Ehret was an employee for purposes of unemployment insurance. The STAB also considered Lapham's testimony with respect to Ehret's tax returns and Worker Relationship Questionnaire. Since Ehret did not appear at the DOR hearing or the STAB proceedings, the STAB stated that he failed to show that he should be reclassified as an independent contractor. The STAB concluded that Ehret was a Northwest employee and that the DOR properly disallowed his business expense deductions.

¶28 Regarding Northwest, the STAB concluded that it failed to meet its burden of proof when it submitted nothing more than sworn Declarations which were found to contain contradictory assertions. The STAB's discussion of the deficiency of Northwest's proof included the following statements:

11

Comment [COMMENT29]: Stab p 19

Comment [COMMENT30]: Stab 10

Comment [COMMENT31]: Stab 13

It is not sufficient merely to question the credibility of the testimony and evidence submitted by the respondent; [Northwest] must provide its own materials that will prove the validity of its position. That positive case has not been made with respect to the employment presumption, the independently established trade status, or to the matter of control, real or potential.

. . . .

> Reviewing [the Work Contract] . . . we find no mention of control, of supervision, of sources of orders, the need for coordination or communication or work records, or the duration of the agreement, or what has been negotiated (equipment, work days, holiday schedules) or what bases there might be for the separation of the parties if there is disagreement.

> . . . .

> Testimony and written evidence is [sic] lacking on the matter of the right to quit or behavior that would cause firing.

¶29     The STAB concluded that the weight of the evidence required it to uphold the DOR's employee classification for certain Northwest workers.

¶30     The District Court upheld the STAB decision.  It stated that the Department of Labor, the previous district court decision in 1988, Lapham, the DOR hearings examiner and the STAB all relied on all or some of the following evidence to properly reach the conclusion that the Northwest workers in question were employees: (1) indefinite periods of hire; (2) lack of negotiated agreements; (3) hourly rate paid eight hours a day; (4) employer furnished materials and equipment; (5) employer retained right to fire; (6) agreements did not contain default provisions; and (7)  some workers reported themselves as employees.

¶31     The District Court also held that the DOR and the STAB properly applied the control test in this case, and it declined to substitute its judgment for that of these agencies as to the weight of the evidence on questions of fact under § 2-4-704(2), MCA.

13

¶32   On appeal, Northwest does not make any cogent argument with respect to the independent contractor test found at § 39-51-201, MCA, and the control test factors.   Rather, Northwest takes issue with the DOR's characterization of "several" workers as employees when, according to Northwest, only Ehret could conceivably be considered as a Northwest employee.   Also, Northwest questions the methodology underlying Lapham's audit since Lapham later revised his audit based upon the Declarations Northwest submitted.

¶33   In addition, Northwest inconsistently argues that it met its burden of proof through the sworn Declarations it submitted to the DOR and, on the other hand, that it could not meet its burden of proof because the burden is contrary to fundamental concepts of fairness, due process and the rules of evidence.   Northwest insists that the DOR effectively created an irrebuttable presumption that "obviously cannot be overcome despite the overwhelming weight of evidence to the contrary."   By "overwhelming evidence," Northwest refers to the Declarations it submitted, and it defends their trustworthiness.    Northwest contends that it was the DOR's obligation to rebut the information contained in the Declarations by providing confidential tax return information to Northwest.   It scoffs at the notion that it was required to call the workers in question as witnesses at the DOR hearing or seek a protective order to obtain the workers' tax information.   Finally, Northwest faults the DOR's failure to produce witnesses other than Lapham.

¶34   The DOR maintains that the burden of proof was on Northwest to rebut the presumption of employee status and that Northwest failed

14

Comment [COMMENT36]: App brf 32

Comment [COMMENT37]: App brf 5

Comment [COMMENT38]: App brf 31

Comment [COMMENT39]: App brf 34

Comment [COMMENT40]: Reply 5

Comment [COMMENT41]: App reply 12

Comment [COMMENT42]: App brf 32

Comment [COMMENT43]: App brf 32

Comment [COMMENT44]: Dor brf 15-16

to show that the presumption was unconstitutional beyond a reasonable doubt. The DOR states that although it did not bear the burden to show whether the Northwest workers were employees or independent contractors, it nevertheless attempted to discover the facts necessary to establish the workers' status and demonstrated that Northwest had the right to control its workers, paid hourly wages, furnished equipment and retained the ability to fire its workers. Regarding the discovery of confidential tax returns, the DOR contends that although they are statutorily protected as confidential under § 15-30-303, MCA, Northwest could have obtained them through a protective order or from the workers themselves.

Comment [COMMENT45]: Dor brf 17

¶35 We hold that the District Court properly upheld the STAB's determination that the Northwest workers in question were employees rather than independent contractors as defined at § 39-51-201(14), MCA (1987), and under the control test. First, upon careful review of the whole record, we conclude that substantial evidence supports the STAB's findings of fact in this matter, and the District Court did not err in so concluding. Furthermore, we agree with the District Court that the STAB correctly considered the control test–and Northwest's lack of proof thereunder–in its determination that the DOR properly classified the workers in question as employees.

¶36 We also agree with the District Court's reasoning with regard to the methodology underlying the DOR audit. It stated that the DOR's revision of its original assessment after reviewing further information evidenced "an objective application of law to fact and

15

a prudent exercise of the DOR's discretion." Contrary to Northwest's position, the District Court's stance regarding the DOR's audit methodology and its revision of the original audit was based in logic and supported by the record.

¶37 We further hold that the District Court did not err in holding that Northwest had the burden of proof in this case and that this burden is constitutionally valid. The District Court cited several legislative enactments placing the burden of proof on an individual asserting independent contractor status. Section 39-51-203(4), MCA (for purposes of unemployment insurance, service performed by an individual for wages is considered to be employment until shown to the satisfaction of the department that the individual is an independent contractor); § 39-71-120(2), MCA (for purposes of workers' compensation, an individual performing services for remuneration is considered to be an employee unless independent contractor status is shown); and Rule 42.17.101(1), ARM (the designation of an individual as an employee for purposes of unemployment compensation establishes the individual as an employee unless facts are shown to the contrary). Furthermore, the District Court, recognizing that a legislative enactment is presumed constitutional unless proven unconstitutional beyond a reasonable doubt, held that Northwest failed to demonstrate that the application of the presumption implicated any fundamental liberty or property interests.

Comment [COMMENT46]: Dc order 3

¶38 With regard to Northwest's criticism of the statutory confidentiality of tax returns, the District Court held that

16

Northwest could have obtained the tax information either directly from a cooperative worker or pursuant to a protective order as provided by § 15-30-303, MCA.

¶39 The District Court correctly held that Northwest bore the burden of proving that its workers were independent contractors and that this burden was not unfair or unconstitutional. Requiring Northwest to show independent contractor status as defined in § 39-51-201, MCA, did not create an "irrebuttable presumption" in this case. Rather, it placed the burden of proof on those individuals who could most effectively demonstrate whether they were employees or independent contractors–the workers themselves. Northwest has not convinced the Court that the DOR unconstitutionally prohibited it from proving its case. Northwest did not attempt to have its workers testify and/or try to obtain their income tax information. Simply stated, Northwest had the burden to show that "several" of its workers were independent contractors, and it failed to do so.

¶40 We hold that the District Court properly upheld the STAB's determination of employee status. The STAB's findings, and the District Court's summary of them, are supported by substantial evidence in the record, and the District Court's conclusions of law were correct.

¶41 (2) Did the District Court err in holding that the Department of Revenue did not exceed its statutory authority in classifying Ehret as an employee?

¶42 Ehret argues that he has a fundamental right to choose independent contractor status and that his reasonable belief as to

Comment [COMMENT47]: App brf 41

17

his employment status should be considered in determining whether he was an independent contractor or an employee. He claims that the DOR's determination that he was an employee infringed upon his freedom of contract.

¶43 The District Court, citing *Phoenix Physical Therapy*, 284 Mont. at 104, 943 P.2d at 528-29, stated that the ability to contract is not absolute and without its limits. It recognized that a party's intent does not control whether he is classified as an employee or independent contractor. Rather, status must be proven as a matter of fact. While the District Court agreed that Ehret had a fundamental right to choose his employment status, he was at the same time required to meet the statutory requirements underlying independent contractor status and demonstrate that he met these requirements as a matter of fact. The District Court held that the DOR did not exceed its statutory authority in presuming Ehret's employee status and that there was no violation of Ehret's right to contract.

¶44 We agree. Ehret claims that the intent of parties must be given effect in resolving their employment status. However, in *Phoenix*, we rejected this argument. *Phoenix Physical Therapy*, 284 Mont. at 104, 943 P.2d at 528-29. Ehret's wishes are not dispositive. Rather, Ehret was required to prove that he was an independent contractor as a matter of fact. The STAB's conclusion that he failed to do so is supported by substantial evidence in the record. We hold that the District Court correctly held that the

DOR did not exceed its statutory authority in classifying Ehret as a Northwest employee.

¶45   (3) Did the District Court err in holding that § 15-30-203(1), MCA, and Rule 42.17.120, ARM, do not constitute a form of unconstitutional dual taxation?

¶46   Pursuant to § 15-30-203(1), MCA (1987), each employer is liable for state withholding taxes.  If the employer fails to deduct and withhold the required amounts and the tax against which the deducted and withheld amounts would have been credited is paid, the amounts required to be deducted and withheld may not be collected from the employer.  Section 15-30-203(3), MCA (1987).  In other words, the DOR cannot collect the same withholding tax twice.  However, under Rule 42.17.120, ARM, the employer will not be relieved from liability for the required withholding taxes unless he can show that the income tax against which the required withholdings may be credited has been paid.

¶47   Northwest contends that duplicative tax assessments have been levied against it for the taxable years in question in violation of its due process and equal protection rights.  In essence, Northwest claims that the DOR assessed its workers and it for the same withholding taxes, thus resulting in an unconstitutional "dual tax."  In support of its argument, Northwest refers to a Notice of Levy issued by the DOR assessing withholding taxes to one of its workers.  Additionally, Northwest emphasizes that it reasonably believed that its workers were independent contractors and complied with applicable tax regulations by reporting workers' wages on the

Comment [COMMENT48]: App brf 23

Comment [COMMENT49]: App brf 24-25

19

requisite Form 1099. In sum, Northwest contends that the current statutory structure has the effect of making it the unconditional guarantor of taxes due by independent contractors.

¶48 The DOR agrees with Northwest's "dual tax" argument to the extent that an employer should not be required to pay withholding taxes if its workers paid those taxes. However, the DOR insists that Northwest did not meet its burden of proving that the workers paid the applicable withholding taxes pursuant to § 15-30-203, MCA, and Rule 42.17.120, ARM.

¶49 With regard to the burden of proof issue, Northwest again contends that the workers' Declarations proved that they paid the required withholding taxes. At the same time, Northwest claims that it was precluded from establishing its dual tax claims since the DOR was not required to rebut Northwest's constitutional claims by providing confidential tax returns.

¶50 The District Court concluded that while § 15-30-203, MCA, and Rule 42.17.120, ARM, placed the burden of proving that withholding taxes have been paid on Northwest, this does not create a dual tax. It stated that if Northwest was assessed state withholding taxes it had but to show the worker at issue also paid that tax. Thus, the court held that the statutory enactments are not unconstitutional. With respect to the confidentiality of tax returns issue, the District Court stated that availability of the relevant tax records is separate from the issue of whether § 15-30-203, MCA, and Rule 42.17.120, ARM, are constitutional.

¶51 We agree.  The statutory enactments do not create a dual tax. Rather, they impose a burden of proof on an employer to show that withholding taxes were paid.  If they were, the employer is relieved from liability for the withholding tax and, in the end, only one tax is assessed.  Moreover, while Northwest continually complains about how the confidentiality of tax returns set forth in § 15-30-303, MCA, made it impossible for it to prove its case, the District Court correctly recognized that Northwest did not directly challenge the constitutionality of § 15-30-303, MCA, and that this provision does not bear upon the propriety of statutes requiring the payment of withholding taxes.  Accordingly, we hold that the District Court correctly upheld the constitutionality of § 15-30-203, MCA, and Rule  42.17.120, ARM.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

21