# KELLY WILD,
## Petitioner and Appellant,
## v.
# FREGEIN CONSTRUCTION,
## Employer,
## and
# MONTANA STATE COMPENSATION
# INSURANCE FUND,
## Respondent and Respondent.

No. 02-198.
Heard October 8, 2002.
Submitted October 24, 2002.
Decided April 29, 2003.
2003 MT 115.
315 Mont. 425.
68 P.3d 855.

426

For Appellant: **Lucas J. Foust**, Foust Law Firm, Bozeman; **Jim Hunt**, Hunt & Molloy, Helena.

For Respondent: **Greg E. Overturf**, Special Assistant Attorney General, Montana State Fund, Helena.

For Amicus: **Lawrence A. Anderson**, Great Falls (MTLA); **Michael S. Kakuk**, Hoovestal, Kakuk & Fanning, Helena, **Jacqueline T. Lenmark**, Keller, Reynolds, Drake, Johnson & Gillespie, Helena (MBIA).

JUSTICE NELSON delivered the Opinion of the Court.

¶1 Kelly Wild appeals a judgment of the Workers' Compensation Court dismissing his claim for benefits and concluding that the

existence of a Certificate of Independent Contractor Exemption previously issued to Wild conclusively precluded any inquiry into whether Wild was an independent contractor (IC) or an employee. We reverse and remand for further proceedings consistent with this Opinion.

¶2 On appeal, Wild raised one broad issue which we restated for purposes of oral argument as follows:

¶3 1. Whether § 39-71-401(3), MCA, as a matter of law, conclusively precludes any factual inquiry into whether an employer/employee relationship exists once the worker has been issued the exemption contemplated by § 39-71-401(3), MCA.

¶4 2. Whether § 39-71-401(3), MCA, read in conjunction with § 39-71-120, MCA, requires the employer to make an initial good faith inquiry of the worker to determine that he or she does, in fact, meet the control and independently established business tests before the employer employs the worker as an IC.

¶5 3. Whether the public policy underlying the Workers' Compensation Act (the Act) generally and as set out in § 39-71-105(1), (2) and (3), MCA, is violated when the employer offers to pay the worker a higher wage on the condition that the worker present an exemption at the time of hire.

### Factual and Procedural Background

¶6 On October 17, 2000, Wild suffered serious and debilitating injuries to his head, shoulder and ribs when he fell off a roof while working for Fregein Construction. Wild filed a claim for workers' compensation benefits, but his claim was denied because he holds a Certificate of Independent Contractor Exemption.

¶7 Wild was first granted an exemption by the Montana Department of Labor and Industry (the Department) in 1993 in connection with his business as a roofing contractor.

At that time, Wild received a letter, dated April 1, 1993, from the Department notifying Wild that

> [a]s an independent contractor you also will not be able to file a claim in the event you sustain an industrial injury or occupational disease.
>
> ....
>
> The exemption remains in effect until you notify the Department of Labor and Industry in writing to cancel the exemption.

Wild continued to timely file applications for renewals of his exemption

up through and including March 6, 1998. The corresponding certificate of exemption was issued effective April 1, 1998 to April 1, 2001.

¶8 In July 2000, after Wild's roofing business failed, he approached Russ Fregein looking for work. Two of Fregein's employees had just quit. Wild told Fregein that he had pawned his roofing equipment and that he needed money to survive.

¶9 Fregein later testified that he offered Wild the choice of either working for $20 per hour as an IC or $15 per hour as a "legit" employee. Wild chose to take the higher wage and work as an IC. Fregein admitted that paying Wild as an IC was also to Fregein's economic benefit. At the time he hired Wild, Fregein paid a workers' compensation premium of 53.6% based upon an individual's rate of pay. Consequently, Fregein would have been required to pay an additional $8 for each hour Wild worked for Fregein Construction as an employee resulting in a total payment of $23 per hour rather than the $20 per hour he agreed to pay Wild as an IC.

¶10 Wild testified that during the first few weeks he worked for Fregein, he completed work on at least one job left over from his own roofing business. Similarly, Fregein testified that, to his knowledge, Wild worked exclusively on Fregein's projects after August 2000 until he was injured on October 17, 2000.

¶11 Fregein did not receive a copy of Wild's exemption until one or two weeks after Wild started to work. Fregein admitted that having an exemption was not a prerequisite for working at his company; he would have hired Wild even if Wild had not had an exemption; and Wild would not have been treated any differently, except for pay, if he were not able to produce an exemption. During the time that Wild worked for Fregein Construction, another individual working as an IC pursuant to an exemption was later paid as an employee without any change to his work duties or status because, according to Fregein, that individual wanted to pay taxes and "you know, to make it legit." After Wild fell and could no longer work, Fregein hired other employees; he did not hire any other ICs.

¶12 On February 1, 2001, Wild filed a Petition for Hearing with the Workers' Compensation Court to recover benefits for the injuries he sustained while working for Fregein Construction. Thereafter, the parties agreed to submit the matter to the Worker's Compensation Court on a stipulated record that included only two depositions with exhibits.

¶13 On February 12, 2002, the Workers' Compensation Court issued its Findings of Fact, Conclusions of Law and Judgment wherein the

court dismissed Wild's claim for benefits and held that the existence of the exemption previously issued to Wild when he owned his own roofing business conclusively precluded "a post-injury factual inquiry into whether claimant was in fact an independent contractor or an employee." Wild appeals from this judgment.

## Standard of Review

¶14 We review a decision of the Worker' Compensation Court to determine whether that court correctly interpreted the law as it applies to the facts of the case at issue. *Lockhart v. New Hampshire Ins. Co.*, 1999 MT 205, ¶ 13, 295 Mont. 467, ¶ 13, 984 P.2d 744, ¶ 13 (citing *Pinyerd v. State Compensation Ins. Fund* (1995), 271 Mont. 115, 119, 894 P.2d 932, 934). When determining whether the Workers' Compensation Court's conclusions of law are correct, this Court's review is plenary. *Thompson v. CIGNA*, 2000 MT 306, ¶ 17, 302 Mont. 399, ¶ 17, 14 P.3d 1222, ¶ 17 (citing *Liberty Northwest Ins. Corp. for Brand S Lumber v. State Compensation Ins. Fund*, 1998 MT 169, ¶ 7, 289 Mont. 475, ¶ 7, 962 P.2d 1167, ¶ 7).

## Issue 1.

¶15 *Whether § 39-71-401(3), MCA, as a matter of law, conclusively precludes any factual inquiry into whether an employer/employee relationship exists once the worker has been issued the exemption contemplated by § 39-71-401(3), MCA.*

¶16 The statutes in effect on the day of an injury determine the benefits to which an injured worker is entitled. *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382 (citations omitted). Because Wild was injured on October 17, 2000, the 1999 Workers' Compensation Act controls.

¶17 In this case, the Workers' Compensation Court determined that the fact that Wild held an exemption as provided for in § 39-71-401(3), MCA (1999), conclusively precluded "a post-injury factual inquiry into whether claimant was in fact an independent contractor or an employee." Thus, the court dismissed Wild's claim for benefits.

¶18 Wild argues on appeal that the Workers' Compensation Court erred in determining that just because Wild held an exemption at the time he worked for Fregein, he was an IC. Wild contends that when an employer is fully aware of all of the facts that make a worker an employee, the employer cannot accept the exemption as valid. He maintains that under such circumstances, an employer should not be able to hide behind the exemption and avoid an employer/employee

relationship. Wild further argues that if the Workers' Compensation Court's reasoning is adopted, employers will be able to pressure employees to "opt out" of the workers' compensation system by suggesting that exemptions be obtained even when workers are clearly employees. Not only is this bad public policy, it is in violation of Montana's statutory laws which require employers to have workers' compensation coverage and which do not allow employees to waive their rights under the Act.

¶19 The provision of the Act at issue in this case, § 39-71-401(3), MCA (1999), provides, in pertinent part:

> (a) A sole proprietor, a working member of a partnership, a working member of a limited liability partnership, or a working member of a member-managed limited liability company who represents to the public that the person is an independent contractor shall elect to be bound personally and individually by the provisions of compensation plan No. 1, 2, or 3 but may apply to the department for an exemption from the Workers' Compensation Act.

> (b) The application must be made in accordance with the rules adopted by the department....

> (c) *When an application is approved by the department, it is conclusive as to the status of an independent contractor and precludes the applicant from obtaining benefits under this chapter.*

> (d) The exemption, if approved, remains in effect for 3 years following the date of the department's approval. To maintain the independent contractor status, an independent contractor shall every 3 years submit a renewal application....

> (e) A person who makes a false statement or misrepresentation concerning that person's status as an exempt independent contractor is subject to a civil penalty of $1,000. The department may impose the penalty for each false statement or misrepresentation.... [Emphasis added.]

¶20 ▮ In the construction of a statute, we are "not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA; *Chain v. Mont. DMV*, 2001 MT 224, ¶ 15, 306 Mont. 491, ¶ 15, 36 P.3d 358, ¶ 15 (citing *Hanson v. Edwards*, 2000 MT 221, ¶ 19, 301 Mont. 185, ¶ 19, 7 P.3d 419, ¶ 19). As we noted in *Chain*, this Court presumes the Legislature would not pass meaningless legislation and we must, as much as is possible, harmonize statutes relating to the same subject

giving effect to each. *Chain*, ¶ 15 (citing *Crist v. Segna* (1981), 191 Mont. 210, 212, 622 P.2d 1028, 1029). Moreover, we have stated that statutory construction should not lead to absurd results if a reasonable construction will avoid it. *Chain*, ¶ 15 (citing *Gaub v. Milbank Ins. Co.* (1986), 220 Mont. 424, 428, 715 P.2d 443, 445).

¶21 In the case *sub judice*, there are several statutes in conflict. While § 39-71-401(3)(c), MCA, provides that an application for exemption approved by the Department is conclusive as to the status of an IC, § 39-71-120, MCA (1999), provides that an individual performing services for remuneration is considered to be an employee unless the individual "is engaged in an independently established trade, occupation, profession, or business" and "has been and will continue to be free from control or direction over the performance of the services, both under the contract and in fact." Additionally, § 39-71-401(1), MCA (1999), requires that an employer who "has any employee in service under any appointment or contract of hire ... shall elect to be bound by the provisions of compensation plan No. 1, 2, or 3." And, § 39-71-409, MCA (1999), prohibits workers from waiving their rights under the Act.

¶22 The State Fund argues that the Legislature intended § 39-71-401(3)(c), MCA, to preclude an after-the-fact determination of IC status and that § 39-71-401, MCA, is an attempt to allow certainty for both the employer and the IC from the beginning of their working relationship. The State Fund maintains that adopting Wild's argument would render § 39-71-401(3)(c), MCA, meaningless—either the exemption provides conclusive proof of the IC's status, or there is no purpose to the statute. On the other hand, to adopt the State Fund's argument that holding an exemption is conclusive proof that the individual is in all cases an IC would render § 39-71-120, MCA, meaningless and would effectively allow employers to obtain exemptions from their workers, treat them as they would any other employee, and thus avoid paying workers' compensation premiums. Contrary to the State Fund's contention, no certainty exists.

¶23 Wild argues that the State Fund ignores some crucial and determinative points. Those being that the State Fund's argument assumes that there actually was a before-the-fact determination of IC status, which was not the case here, and that the exemption itself expressly requires the employer to determine that a worker actually meets the test for IC status.

¶24 In this case, Fregein did not assess or even consider whether Wild was an employee. Wild was an independent roofing contractor when

he was issued his exemption, but, prior to going to work for Fregein Construction, Wild's status changed. Fregein's own testimony clearly shows that he was aware that Wild no longer had an independent business. Fregein also admitted that he never read the terms of the exemption, he never discussed its terms with Wild, he never attempted to determine whether it was valid, and he never determined whether Wild's relationship with Fregein Construction complied with its terms.

¶25 ▮ Nothing in § 39-71-401, MCA, precludes a factual inquiry into whether an employer/employee relationship exists at the time a worker is hired. On the contrary, we agree that an employer has a clear obligation to make at least a cursory determination of whether the worker is an IC in fact, as opposed to merely in name, before the employer can reasonably rely upon the exemption. An employer who fails to do so, with knowledge of the facts, should not be allowed to hide behind the exemption.

¶26 To require an employer to comply with the specific terms and requirements of the exemption, before allowing the employer to shield himself with it, would not render § 39-71-401(3)(c), MCA, meaningless nor defeat its purpose. Instead, it would ensure that employers and ICs alike follow through with the intent of the statute, i.e., that once an exemption is presented to an employer, the employer will actually treat the worker as an IC and not, as in the case at bar, an employee.

¶27 Furthermore, a worker may be an IC at the time the exemption is issued, but change status as a factual matter later. Therefore, it is contrary to the purposes of the Act to ignore a later reality just because the person was once a true IC. Even the Department contemplated that an IC's status could change during the three years the exemption was in effect. The rules promulgated by the Department provide that an exemption may be suspended or revoked if it is determined that "the certificate holder is not acting as an independent contractor due to an employing unit's failure to treat the certificate holder as an independent contractor." Rule 24.35.131, ARM.

¶28 When an employer hires a worker, it is the employer that dictates whether the worker will be paid by the hour, how the worker will be controlled, whose tools are going to be used and whether the worker can be fired. Thus, the employer should be required to determine whether the person is an IC based on what the employer knows and what the parties agree to during the working relationship. If the facts change during the course of employment, then the employer should be required to reassess the situation. To do otherwise would lead to an absurd result and we have repeatedly stated that statutory

construction should not lead to absurd results if a reasonable construction will avoid it. *Chain*, ¶ 15 (citing *Gaub*, 220 Mont. at 428, 715 P.2d at 445).

¶29 ■ Accordingly, we hold that § 39-71-401(3), MCA, does not, as a matter of law, conclusively preclude any factual inquiry into whether an employer/employee relationship exists once the worker has been issued the exemption contemplated by § 39-71-401(3), MCA.

## Issue 2.

¶30 *Whether § 39-71-401(3), MCA, read in conjunction with § 39-71-120, MCA, requires the employer to make an initial good faith inquiry of the worker to determine that he or she does, in fact, meet the control and independently established business tests before the employer employs the worker as an IC.*

¶31 ■ Based on our discussion in Issue 1, we hold that reading §§ 39-71-120 and 401(3), MCA, together does impose on the employer an obligation to make an initial good faith inquiry of the worker to determine whether the worker does in fact meet the control and independently established business tests before the employer employs the worker as an IC. As Wild noted in his reply brief before this Court, if it looks like a duck, walks like a duck and quacks like a duck, it must be a duck. We would only add that it must be a duck even if it is holding a piece of paper that says it is a chicken.

¶32 Section 39-71-120, MCA (1999), provides:

> **Independent contractor defined.** (1) An "independent contractor" is one who renders service in the course of an occupation and:
>
> (a) has been and will continue to be free from control or direction over the performance of the services, both under the contract and in fact; and
>
> (b) is engaged in an independently established trade, occupation, profession, or business.
>
> (2) An individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection (1) are met.

The exemption includes the language from subsections (a) and (b) of this statute and cautions employers that the exemption does not relieve them of their responsibility for establishing that a person is in fact an IC. In the case before us on appeal, it is clear that had Fregein performed an inquiry based on the facts known to him at the time he hired Wild, he would have determined that Wild's exemption was

invalid in this situation and that Wild was in fact an employee.

¶33 ■ In determining whether an individual qualifies for IC status, we use a two-step process. First, it must be determined whether the "control factors" are met. To determine this, we have developed the following four-part control test: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Spain v. Mont. Dep't of Revenue*, 2002 MT 146, ¶ 23, 310 Mont. 282, ¶ 23, 49 P.3d 615, ¶ 23 (citing *Walling v. Hardy Constr.* (1991), 247 Mont. 441, 447, 807 P.2d 1335, 1338).

¶34 Second, it must be determined whether the individual is engaged in an independently established, trade, occupation, profession, or business. Unless both parts of the test are satisfied by a convincing accumulation of undisputed evidence, the worker is an employee and not an IC. *Northwest Publishing v. Montana Dep't of Labor & Indus.* (1993), 256 Mont. 360, 363, 846 P.2d 1030, 1032; *Sharp v. Hoerner Waldorf Corp.* (1978), 178 Mont. 419, 424, 584 P.2d 1298, 1301.

¶35 Fregein's own testimony verifies that under this test, Wild was clearly an employee and not an IC. Fregein required Wild to work a particular job site with the rest of the crew. Once on the job site, Fregein told the workers, including Wild, what portion of the roof they should work on. Fregein inspected all of the work, including Wild's. Fregein told the workers, including Wild, when it was time to leave the job site at the end of the day.

¶36 In addition, Fregein paid Wild hourly rather than on a completed contract basis; Fregein furnished the tools and equipment with the exception that Wild used his own saw because he is left handed; and Fregein retained the right to fire Wild. This last factor "is strong evidence of an employer-employee status as the right to terminate the relationship without liability is not consistent with the concept of independent contractorship." *Sharp*, 178 Mont at. 425-26, 584 P.2d at 1302 (citations omitted).

¶37 Furthermore, under *Lundberg v. Liberty Northwest Ins. Co.* (1994), 268 Mont. 499, 503-04, 887 P.2d 156, 158-59, the fact that Wild did not perform work for other individuals after August 2000, is decisive of the fact that he was not engaged in an independently established trade, occupation, profession or business as a roofer at the time of his injury. Fregein testified that Wild finished up a couple of jobs that he had when he went to work for Fregein, but after the end of August 2000, Fregein believed Wild did not have any jobs other than those he did for Fregein. Wild did not contract with any other subcontractors and he did not bid against Fregein on any jobs.

¶38 While it is not always within an employer's purview at the time of hiring whether the prospective worker has an independently established business, it is the employer that dictates whether the worker will be paid by the hour, how the worker will be controlled, whose tools are going to be used and whether the worker can be fired. Thus, it is within the employer's purview whether the individual "has been and will continue to be free from control or direction over the performance of the services," § 39-71-120(1)(a), MCA, and, thus, it is reasonable to require an employer to make an initial good faith inquiry.

¶39 ■ Accordingly, we hold that § 39-71-401(3), MCA, read in conjunction with § 39-71-120, MCA, does require the employer to make an initial good faith inquiry of the worker to determine that he or she does, in fact, meet the control and independently established business tests before the employer employs the worker as an IC and if the employer determines the worker is an IC, to thereafter treat the worker as an IC and not as an employee as Fregein treated Wild in this case.

## Issue 3.

¶40 *Whether the public policy underlying the Act generally and as set out in § 39-71-105(1), (2) and (3), MCA, is violated when the employer offers to pay the worker a higher wage on the condition that the worker present an exemption at the time of hire.*

¶41 Section 39-71-105, MCA, provides, in pertinent part:

(1) It is an objective of the Montana workers' compensation system to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease. Wage-loss benefits are not intended to make an injured worker whole; they are intended to assist a worker at a reasonable cost to the employer. Within that limitation, the wage-loss benefit should bear a reasonable relationship to actual wages lost as a result of a work-related injury or disease.

(2) A worker's removal from the work force due to a work-related injury or disease has a negative impact on the worker, the worker's family, the employer, and the general public. Therefore, it is an objective of the workers' compensation system to return a worker to work as soon as possible after the worker has suffered a work-related injury or disease.

(3) Montana's workers' compensation and occupational disease insurance systems are intended to be primarily

self-administering. Claimants should be able to speedily obtain benefits, and employers should be able to provide coverage at reasonably constant rates. To meet these objectives, the system must be designed to minimize reliance upon lawyers and the courts to obtain benefits and interpret liabilities.

¶42 The Act was designed to provide benefits to injured workers. The Act is worthless if employers are provided a means of opting out of the Act by what amounts to be a transparent sham. For an employer to give the individual being hired the choice of being an employee or an IC for an increase in pay simply encourages employers to avoid their obligations under the Act and precipitates exactly the sort of problems that § 39-71-409, MCA (prohibiting workers from waiving their rights under the Act) was designed to avoid. Furthermore, interpreting the Act to uphold this practice puts to a severe economic and competitive disadvantage those employers who, in compliance with the Act, assume their legitimate obligations under the law by hiring and paying workers according to whether they are *in fact* (and not simply in name) ICs or employees. And finally, this practice allows employers to prey on blue collar laborers, few of whom are foresighted enough (or in some cases financially able) to reject the offer of a few extra dollars per hour in order to obtain the protections of the Act that may, one day, save them and their families from financial ruin.

¶43 The State Fund contends that it is the IC who controls the working relationship because the IC chooses to obtain the exemption and opt out of the workers' compensation system and because the IC chooses if and when he will revoke his exemption and again be eligible to claim workers' compensation benefits. We disagree. It is the employer who determines how much control to place on the worker and if the worker objects to the way the employer wants to do business, then very likely the worker will not have a job.

¶44 ▓ While the State Fund is correct that in this case, Wild chose to obtain an exemption and worked as an IC for many years and that it was within his control to revoke his exemption, it was not within his control that Fregein treated him as an employee in every respect. Montana public policy cannot favor applying an exemption when the employer abuses the exemption for his own economic benefit and fails to comply with the requirements of the exemption.

¶45 We are not saying that in this case, Fregein fraudulently induced Wild to work as an IC. We agree that Wild made a choice, yet it was Fregein that treated Wild as an employee rather than as an IC. Furthermore, had Fregein not suggested an IC relationship with more

money, Wild would have been working as an employee.

¶46 ▮ Accordingly, we hold that the public policy underlying the Act generally and as set out in § 39-71-105, MCA, is violated when the employer offers to pay the worker a higher wage on the condition that the worker present an exemption at the time of hire.

¶47 Reversed and remanded for further proceedings consistent with this Opinion.

JUSTICES COTTER, TRIEWEILER, REGNIER and LEAPHART concur.

JUSTICE RICE specially concurring.

¶48 I concur with the Court's essential holding: that the Certificate of Independent Contractor Exemption issued by the Department of Labor and Industry to Kelly Wild was insufficient to exempt Wild from workers' compensation benefits. However, my reasons for this conclusion are much different than those relied upon by the Court, and I dissent from the Court's statutory interpretation. I conclude that the Department's certification process did not provide to Fregein Roofing the conclusive determination of Wild's status that the legislation intended.

¶49 Section 39-71-401, MCA, provides that a person "who represents to the public that the person is an independent contractor" may apply to the Department for "an exemption from the Workers' Compensation Act." Section 39-71-401(3)(a), MCA. If, "in accordance with the rules adopted" by the Department, the Department approves the application, the approval is to be "conclusive as to the status of an independent contractor." Section 39-71-401(3)(c), MCA. That status precludes the applicant from obtaining workers' compensation benefits, because the Department's certification exempts the applicant from the Act.

¶50 The purpose of this determination is to eliminate the need for a hiring agent to make the complex inquiry about an exemption-holder's status as an independent contractor. No second guessing is necessary–the holder possesses a written certificate from the Department which conclusively establishes his status. That "settles" the issue. However, in this case, the Department's approach to the exemption statute, by its regulations and the issuance of the independent contractor certificate, has not implemented the underlying purpose of the statute.

¶51 The Certificate of Independent Contractor Exemption issued to Kelly Wild by the Department did not conclusively determine that Wild was an independent contractor who was exempt from coverage

under the Act. It merely certified that Wild *swore* that he was independently engaged in an established trade, and then placed the duty of determining whether Wild was actually an independent contractor–the Department's duty under the exemption application process–squarely on the employer. Wild's Certificate states, in part:

> *This certificate does not relieve the hiring agent of its responsibility for establishing that a person is an independent contractor.*
>
> The law defines an independent contractor as one who renders services in the course of an occupation and:
>
> a. has been and will continue to be free from control or direction over the performance of the services, both under the contract and in fact; and
>
> b. is engaged in an independently established trade, occupation, profession, or business.
>
> *If an individual does not pass both tests, the employer must ensure workers' compensation coverage exists prior to hiring.* If a hiring agent questions a workers' status, they may contact the Department of Labor and Industry, Independent Contractor Central Unit at (406) 444-1446.
>
> NOTICE: Montana law prohibits an employee from waiving his/her rights under the workers' compensation and unemployment insurance law. An employer who purposely avoids his/her responsibility to provide workers' compensation insurance and unemployment insurance for employees may be committing employer misconduct, a felony, punishable by up to 10 years in prison and/or a $50,000 fine.

(Emphasis added.) Thus, the burden placed upon the Department by the Legislature was entirely passed on to the employer. The employer gained nothing by the Department's issuance of the exemption certificate–Fregein Construction was under the same duty to determine whether Wild was an independent contractor as it was without a certificate. Absolutely nothing about Wild's status had been determined by the Department. The only thing the Department's certificate accomplished was to advise a potential hiring agent that the exemption-holder claimed to be an independent contractor, something Wild himself could have represented to Fregein–without paying an application fee. The conclusive determination of Wild's status, upon which an employer could rely, was to occur when the Department approved an "exemption from the Workers' Compensation Act." Section 39-71-401(3)(a), MCA. However, although the Department issued a

"certificate," it failed to affirmatively approve an exemption.

¶52 This is not a conflict between a statute and an administrative regulation which can be remedied by holding that the statute must prevail. Because the Department possesses the expertise to make independent contractor determinations, the Legislature sought to employ that expertise to define the working relationship in advance of its commencement. However, this was not done. The Department, whether by reason of budgetary limitation or interpretational error, did not implement the conclusive determination which the statute intended. In fact, the Department's certificate warned Fregein Roofing to make its own decision about the issue, and advised that Fregein could face penalties if the decision was wrong.

¶53 In my view, the Court's analysis of whether the statutes either conclusively preclude an employer from engaging, or require an employer to engage, in a factual inquiry about a holder's status is erroneous. The Court's interpretation of § 39-71-401(3), MCA, renders it meaningless. There is no conflict between § 39-71-401(3), MCA, and § 39-71-120, MCA. For purposes of the exemption at issue here, the latter statute's definition of independent contractor is to be applied *by the Department* when determining whether an applicant qualifies for an exemption. After the Department issues a certificate, the employer does not commence the inquiry all over again but, rather, is entitled to rely on the Department's determination. Otherwise, the certificate, and the statute, accomplish nothing. Neither does § 39-71-401(3), MCA, conflict with the policy objectives set forth in § 39-71-105, MCA. An independent contractor can legitimately opt out of workers' compensation coverage and waive available benefits because he is not an employee.

¶54 For these reasons, I dissent from the Court's rationale, but concur in Court's holding.

CHIEF JUSTICE GRAY joins in the concurring opinion of JUSTICE RICE.