No. 99-548

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 221

301 Mont. 185

7 P.3d 419

JAMES L. HANSON,

Plaintiff and Appellant,

v.

KATHRYN B. EDWARDS,

Defendant and Respondent.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Alan J. Lerner, Attorney at Law, Kalispell, Montana

David M. Ortley, Attorney at Law, Kalispell, Montana

For Respondent:

Donald R. Herndon, Herndon, Sweeney & Halverson, P.C.,

Billings, Montana

Submitted on Briefs: January 13, 2000

Decided: August 15, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Plaintiff, James Hanson, brought this action in the District Court for the Eleventh Judicial District in Flathead County to recover damages from the Defendant, Kathryn Edwards, for injuries sustained when he was struck by her automobile. Following a trial by jury, the jury found no negligence on the part of the Defendant. Plaintiff appeals the District Court's refusal to give the jury several of Plaintiff's proposed instructions. We affirm the judgment of the District Court in part and reverse in part and remand for a new trial.

¶2 The following issues are presented on appeal:

¶3 1. Did the District Court abuse its discretion when it refused to instruct the jury that an unmarked crosswalk exists at every intersection pursuant to § 61-1-209(2), MCA?

¶4 2. Did the District Court abuse its discretion when it refused to instruct the jury that a heightened standard of care applies to motorists who operate in areas in which the motorist knows that children are likely to be present?

¶5 3. Did the District Court abuse its discretion when it refused to instruct the jury that a motorist has an affirmative duty to ascertain if an intersection is clear of pedestrians prior to proceeding into the intersection, and to further anticipate that pedestrians may be present at the intersection?

## FACTUAL BACKGROUND

¶6 On December 21, 1994, at approximately 8:00 a.m., the Plaintiff, 15 year old James Hanson, was struck by a Chevrolet Suburban driven by the Defendant, Kathryn Edwards. At the time of the accident, Hanson was attempting to cross Meridian Road at or near its

intersection with Parkway Drive in Kalispell, Montana. Meridian Road is a heavily traveled north to south, two-lane highway and Parkway Drive meets Meridian Road at a "T" intersection near Kalispell Junior High School. The intersection between Meridian Road and Parkway Drive has no painted lines to delineate a crosswalk, nor is it approached by sidewalks.

¶7 At some point after Hanson had stepped into the middle of the road, Edwards' vehicle struck Hanson and threw him across the road. As a result of the collision, Hanson suffered multiple injuries, including a broken right leg and torn ligaments in his left knee.

¶8 A jury trial was held on April 19 through 23, 1999. Edwards testified at trial that prior to impact she passed a commercial van traveling northbound on Meridian Road, and that Hanson stepped out from behind the northbound van. Edwards further testified that she was only able to see Hanson after he stepped into the beam of her headlights at a distance approximately 10 feet in front of her.

¶9 At the close of the Defendant's case, Hanson moved for a directed verdict on the issue of liability based on his contention that he was within an unmarked crosswalk at an intersection at the time of the accident and therefore had the right-of-way, and Edwards was negligent as a matter of law. The District Court denied Hanson's motion.

¶10 At the conclusion of testimony, the District Court settled jury instructions with the parties' attorneys. Hanson offered several proposed jury instructions which were refused by the District Court. After deliberations, the jury returned the Special Verdict Form finding that Edwards was not negligent.

¶11 On May 20, 1999, Hanson filed a motion for a new trial and a motion for judgment notwithstanding the verdict. On July 19, 1999, the District Court entered its order denying Hanson's post-trial motions.

## STANDARD OF REVIEW

¶12 We review of a district court's refusal to give proffered jury instructions for an abuse of discretion. *Barnes v. City of Thompson Falls*, 1999 MT 77, ¶ 8, 294 Mont. 76, ¶ 8, 979 P.2d 1275, ¶ 8. A trial court is imbued with broad discretion to determine whether or not it will give a proposed instruction to the jury, and this Court will not overturn a district court on the basis of alleged instructional errors absent an abuse of that discretion. *Barnes*, ¶ 8.

## DISCUSSION

## ISSUE 1

¶13 Did the District Court abuse its discretion when it refused to instruct the jury that an unmarked crosswalk exists at every intersection pursuant to § 61-1-209(2), MCA?

¶14 Hanson contends that the District Court abused its discretion when it refused to give Hanson's Proposed Jury Instruction No. 39, which instructed the jury that an unmarked crosswalk exists at every intersection. Hanson asserts that, pursuant to § 61-1-209(2), MCA, a crosswalk is present at any portion of a roadway at an intersection.

¶15 In response, Edwards contends that the District Court properly instructed the jury on the statutory definition of a crosswalk found at § 61-1-209(1), MCA, and properly refused the definition of a crosswalk found at § 61-1-209(2), MCA, which, according to the Defendant and the District Court, did not apply to the intersection involved in this case.

¶16 Hanson's Proposed Jury Instruction No. 39 provided the following, in relevant part:

> (1) A "crosswalk" for purposes of this case is defined as, "any portion of a roadway at an intersection.
>
> (2) An "intersection" for purposes of this case is defined as, "the area embraced within the prolongation or connection of lateral curb lines or if none then the lateral boundary lines of the roadways of two highways which join one another at or approximately right angles or the area within which vehicles traveling upon different highways joining at any angle may come in conflict."

¶17 Section 61-1-209, MCA, provides:

"Crosswalk" means:

> (1) that part of a roadway at an intersection included within the connections of the lateral lines of the sidewalks on opposite sides of the highway measured from the curbs or, in the absence of curbs, from the edges of the traversable roadway;

(2) any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrians crossing by lines or other markings on the surface.

¶18 Witnesses for both Hanson and Edwards agreed that the "T" intersection of Meridian Road and Parkway Drive had no sidewalks, curbs, or painted lines delineating a crosswalk. Accordingly, Hanson's argument that he was in an unmarked crosswalk at the time of the accident is based on his construction of § 61-1-209(2), MCA, that the conjunction "or" prevents the phrase "any portion of a roadway at an intersection" from being modified by the balance of the sentence which provides "distinctly indicated for pedestrians crossing by lines or other markings on the surface." Based on his construction of § 61-1-209(2), MCA, Hanson argues that the statute provides for a crosswalk at "any portion of a roadway at an intersection."

¶19 In construing a statute where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all. *See* § 1-2-101, MCA. Words and phrases used in the statutes of Montana are construed according to the context and the approved usage of the language. *See* § 1-2-106, MCA. In the construction of a statute, the intention of the legislature is to be pursued if possible. *See* § 1-2-102, MCA.

¶20 The District Court concluded that:

> Read in its most logical and common sense way, subsection (2) creates, contrary to Plaintiff's argument, a crosswalk at an intersection or elsewhere, <u>if</u> lines or other markings on the surface are distinctly indicated for pedestrians crossing. To separate the phrase "any portion of a roadway at an intersection" from the modifying phrase "distinctly indicated for pedestrians crossing by lines or other markings on the surface" is to give a tortured and misleading reading to an otherwise clear statute.

¶21 Hanson asserts that his interpretation of § 61-1-209(2), MCA, is in accord with § 61-8-502(1)(a), MCA, which provides:

> Except as provided in subsection (1)(b), when traffic-control signals are not in place or not in operation, *the driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway within a marked crosswalk or within an unmarked crosswalk at an intersection*, but a pedestrian may not suddenly leave a curb or other place of safety and walk or run into the path of a vehicle that is so close that it is impossible for the driver to

yield . . . .

(Emphasis added.)

¶22 Hanson asserts that § 61-8-502, MCA, recognizes that an "unmarked crosswalk" exists at intersections. Hanson further points out that the 1993 legislative history for House Bill 233, in which the legislature amended § 61-8-502, MCA, to its present form, supports his interpretation of both § 61-8-502, MCA, and § 61-1-209(2), MCA. The legislative history for House Bill 233 provides as follows:

> Since Rep. Benedict, HB 233's sponsor, had not yet arrived SEN. SWYSGOOD made a few opening statements in the interest of time. He read the title of HB 233 and *stated that HB 233 would give pedestrians the right-of-way when they begin to cross a street at an intersection.*
>
> . . . .
>
> *SEN. TVEIT asked SEN. SWYSGOOD if HB 233 would create a situation in which once a pedestrian steps onto the crosswalk the cars must stop. SEN. SWYSGOOD replied yes. SEN BRUSKI-MAUS added that would also apply if a pedestrian stepped onto the street within an unmarked crosswalk at an intersection.*
>
> . . . .
>
> SEN. REA asked if HB 233 would eliminate the violation of jay-walking. SEN. SWYSGOOD replied he would assume that jaywalking could still be enforced in appropriate situations. HB 233 would not allow pedestrians to just wander out into the street; they would need to cross at an intersection or a designated crosswalk.
>
> . . . .
>
> SEN. SWYSGOOD noted another application would be established crosswalks that have not been repainted for awhile. He stated a lot of towns do not regularly paint their crosswalks and if the white paint is not visible a motorist might assume they were not in a crosswalk area and drive through it even if a pedestrian has just started walking across that now unmarked crosswalk.

. . . .

SEN. STANG asked Rep. Benedict to explain why HB 233 made reference to "unmarked crosswalks". He stated the Committee could understand and agreed with HB 233 as it applies to marked crosswalks. Rep. Benedict replied he though that portion of HB 233 was to address the situation in rural areas where there are no marked crosswalks because of low pedestrians traffic in the area, but where pedestrians need to be able to cross a busy highway.

. . . .

SEN. BRUSKI-MAUS pointed out that in her district there are very few painted crosswalks, and they are only on highways. She stated the safety of people crossing at residential intersections is just as valid as that of people on marked crossings.

. . . .

CHAIRMAN WEEDING asked if any committee member objected to taking action on HB 233. SEN. STANG replied he would suggest taking out the reference to the "unmarked crosswalk". Tom Gomez stated that provision was already in the law in MCA 61-8-503 which is the section following the one HB 233 would amended. He said this section refers to pedestrians "crossing at a roadway at any point within a marked crosswalk or within an unmarked crosswalk at an intersection". He stated this section stipulates the pedestrian who is not in a marked crosswalk or an unmarked crosswalk at an intersection must yield to all cars on a roadway.

SEN. STANG asked if HB 233 would create a conflict since MCA 61-8-503 required that the pedestrian yield, whereas HB 233 would require the motorists to yield. SEN. BRUSKI-MAUS replied MCA 61-8-503 required the pedestrian to yield on the roadway, but not at the intersection.

. . . .

SEN. SWYSGOOD said he felt the language in HB 233 did not expand or detract on the definition of an unmarked crosswalk at an intersection, since that definition is

in current statute.

(Emphasis added.)

¶23 It is clear that the intention of the legislature in amending § 61-8-502, MCA, by the enactment of House Bill 233, was to provide for a crosswalk at every intersection, regardless of whether the intersection has sidewalks, or markings, or neither. Reading § 61-1-209(2), MCA, *in pari materia* with § 61-8-502, MCA, as required by § 1-2-101, MCA, we conclude that the only way to give consistent effect to the language of § 61-1-209(2), MCA, is to interpret the statute in the manner suggested by Hanson.

¶24 Moreover, § 61-8-503(1), MCA, provides:

> Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

¶25 Based upon the language in §§ 61-8-502 and - 503, MCA, and the clear intention of the legislature, as expressed by those who testified regarding HB 233, we conclude that Montana law provides for a crosswalk on any portion of a roadway at an intersection. Accordingly, we further conclude that the District Court abused its discretion when it refused to give Hanson's Proposed Jury Instruction No. 39 which instructed the jury that an unmarked crosswalk exists at every intersection.

## ISSUE 2

¶26 Did the District Court abuse its discretion when it refused to instruct the jury that a heightened standard of care applies to motorists who operate in areas in which the motorist knows that children are likely to be present?

¶27 Hanson asserts that the District Court abused its discretion when it refused to instruct the jury that a motorist is held to a heightened standard of care when operating in areas where children are likely to be present. Hanson relies on *Okland v. Wolf* (1993), 258 Mont. 35, 850 P.2d 302, for his proposition that a heightened duty of care is required by a motorist in the vicinity of children.

¶28 In response, Edwards contends that Hanson was not entitled to instructions concerning a "heightened duty of care" because there is no authority in Montana for a heightened duty of care. Edwards asserts that the jury was properly instructed regarding the standard of care.

¶29 In addition to several statutory requirements binding upon pedestrians and motorists, the jury was instructed as follows:

> Every person has a right to assume that every other person will act with reasonable care. In the absence of a reason to think otherwise, it is not negligent for a person to fail to anticipate an injury which can result only from another's violation of the law or failure to use reasonable care.

¶30 In *Okland*, we stated the following:

> The intersection [in this case] is located in a residential area with homes on both sides of the street. Defendant was aware that it was common for children to be playing and biking in the area. He was also aware that because of the presence of children in the area, it was important to keep a lookout on both sides of the road. He acknowledged that he knew from the driver's education course he had just completed that drivers need to be especially alert for children because they are unpredictable and you never know what they are going to do.

*Okland*, 258 Mont. at 39, 850 P.2d at 305.

¶31 A person's duty of care varies depending on the circumstances at the time and place in question. However, in *Okland*, as in this case, the standard negligence instruction permitted the plaintiff to argue that the circumstances require a heightened standard of care. That instruction provided in both cases as follows:

> Negligence is the failure to use reasonable care. Negligence may consist of action or inaction. A person is negligent if he fails to act as an ordinarily prudent person would act under the circumstances.

*Okland*, 258 Mont. at 40, 850 P.2d at 306.

¶32 We therefore conclude that the District Court adequately instructed the jury regarding the standard of care applicable to the Defendant.

# ISSUE 3

¶33 Did the District Court abuse its discretion when it refused to instruct the jury that a motorist has an affirmative duty to ascertain if an intersection is clear of pedestrians prior to proceeding into the intersection, and to further anticipate that pedestrians may be present at the intersection?

¶34 Hanson asserts that the District Court abused its discretion when it refused to instruct the jury that Edwards had an affirmative duty to ascertain that the intersection was clear before proceeding and that she also had a duty to anticipate that pedestrians may be present at the intersection.

¶35 Hanson's proposed jury instruction set forth the following:

> The driver of an automobile has a duty to ascertain if an intersection is clear of pedestrians before entering the intersection, and further has a duty to anticipate that pedestrians may be present at the intersection. If you find Defendant breached the above duties, Defendant is negligent.

¶36 Section 61-8-504, MCA, provides:

> Notwithstanding the foregoing provisions of this part, every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian or with any person operating a bicycle upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

¶37 The jury was instructed as follows:

> Montana law provides: The driver of a vehicle shall yield the right-of-way, slowing down or stopping if need be to so yield, to a pedestrian crossing the roadway with in a marked crosswalk or within an unmarked crosswalk at an intersection, but a pedestrian may not suddenly leave a curb or other place of safety and walk or run into the path of a vehicle that is so close that it is impossible for the driver to yield.

¶38 We conclude that the jury was properly instructed regarding the obligation of a motorist approaching an intersection and that the District Court did not abuse its discretion when it refused to instruct the jury regarding affirmative duties to ascertain that an intersection is clear and to anticipate the presence of pedestrians.

¶39 We affirm the judgment of the District Court in part and reverse the judgment of the District Court in part and remand for a new trial with proper jury instructions.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART