No. 02-244

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 116

MARK MATHEWS,

Petitioner and Appellant,

v.

BJS CONSTRUCTION, INC., a Montana
Corporation,

Employer

and

LIBERTY NORTHWEST INSURANCE
CORPORATION,

Respondent and Respondent.

APPEAL FROM:     Workers' Compensation Court
Cause No. WCC 2001-0294
The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

For Respondent:

Larry W. Jones, Carrie L. Garber, Jones & Garber, Missoula, Montana

For Amicus:

Lawrence A. Anderson, Great Falls, Montana (MTLA); Michael S.
Kakuk, Hoovestal, Kakuk & Fanning, Jacqueline T. Lenmark, Keller,
Reynolds, Drake, Johnson & Gillespie, Helena, Montana (MBIA)

Heard: October 8, 2002
Submitted: October 24, 2002
Decided: April 29, 2003

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Mark Mathews appeals a determination of the Workers' Compensation Court concluding that because BJS Construction, Inc. (BJS) obtained a Certificate of Independent Contractor Exemption from Mathews at the time he was hired, Mathews is conclusively presumed to be excluded from the Workers' Compensation Act (the Act). We reverse and remand for further proceedings consistent with this Opinion.

¶2    On appeal, Mathews raised three issues which we restated for purposes of oral argument as follows:

¶3    1. Whether § 39-71-401(3), MCA, as a matter of law, conclusively precludes any factual inquiry into whether an employer/employee relationship exists once the worker has been issued the exemption contemplated by § 39-71-401(3), MCA.

¶4    2. Whether § 39-71-401(3), MCA, read in conjunction with § 39-71-120, MCA, requires the employer to make an initial good faith inquiry of the worker to determine that he or she does, in fact, meet the control and independently established business tests before the employer employs the worker as an independent contractor (IC).

¶5    3. Whether the public policy underlying the Act generally and as set out in § 39-71-105(1), (2) and (3), MCA, is violated when the employer offers to pay the worker a higher wage on the condition that the worker present an exemption at the time of hire.

**Factual and Procedural Background**

¶6    BJS is in the business of "framing" which consists of constructing the walls, floors and roof of a house. BJS employs both employees and ICs. Brian Schroeder and his wife are the sole owners of BJS.

¶7    On June 8, 2000, the date Mathews was injured, BJS employed three workers as employees and three workers, including Mathews, as ICs. Brian Schroeder set the work

2

hours, provided most of the equipment, called the lunch and coffee breaks, and supervised the work of employees and ICs alike. A worker's pay, whether the worker was designated as an employee or an IC, was solely dependent on the number of hours the person worked. ICs were not entitled to any other bonuses or profits.

¶8      Schroeder offered new hires the option of receiving a greater hourly wage if they would provide him with an exemption, or receiving a lesser hourly wage if BJS had to incur the expenses of employment taxes, workers' compensation insurance and unemployment insurance. BJS paid employees between $10 and $14 per hour and ICs between $15 and $20 per hour. BJS does pay employees overtime wages for overtime work, but it does not pay ICs overtime wages for overtime work. Mathews had been issued an exemption on December 31, 1997, that was effective until December 31, 2000. Mathews does not dispute that he knowingly and voluntarily entered into an agreement with BJS to work as an IC.

¶9      In his deposition, Schroeder testified that he did not do anything to establish that Mathews was in fact working as an IC. Mathews had no separate place of employment, no other employment agreements, did not pay for any materials or supplies, and realized no profit other than his hourly pay from BJS. On one occasion, Schroeder subcontracted out Mathews' labor to another contractor. Schroeder billed the other contractor and paid Mathews for the hours he worked.

¶10     On June 8, 2000, Schroeder instructed Mathews to cut roof planking on a forklift raised to the height of the roof trusses. Sawdust and scrap lumber had collected on the roof. Mathews was injured when he stepped on a piece of scrap lumber, slid down the roof and

3

fell to the ground breaking his leg in several places. Mathews filed a claim for compensation on July 14, 2000, but BJS's insurer, Liberty Northwest Insurance Corporation (Liberty), refused to pay the claim relying on the conclusive presumption in § 39-71-401(3), MCA.

¶11 On February 1, 2002, the Workers' Compensation Court granted summary judgment in favor of BJS and Liberty concluding that Mathews' claim was barred by § 39-71-401(3)(c), MCA (1999), which provides that a worker with an exemption is precluded from receiving workers' compensation benefits. Mathews appeals.

**Standard of Review**

¶12 Our standard of review in appeals from summary judgment rulings is *de novo*. *Oliver v. Stimson Lumber Co.*, 1999 MT 328, ¶ 21, 297 Mont. 336, ¶ 21, 993 P.2d 11, ¶ 21 (citing *Motarie v. N. Mont. Joint Refuse Disposal* (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; *Mead v. M.S.B., Inc.* (1994), 264 Mont. 465, 470, 872 P.2d 782, 785). When we review a trial court's grant of summary judgment, we apply the same evaluation as that court based on Rule 56, M.R.Civ.P. *Oliver*, ¶ 21 (citing *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). We set forth our inquiry in *Bruner* as follows:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as
> a matter of law. We review the legal determinations made by a district court as to whether the court erred.

*Oliver*, ¶ 21 (quoting *Bruner*, 272 Mont. at 264-65, 900 P.2d at 903).

4

¶13  "Summary judgment is an extreme remedy which should never be substituted for a trial if a material factual controversy exists."  *Montana Metal Buildings., Inc. v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694, 696 (citing *Clark v. Eagle Systems, Inc.* (1996), 279 Mont. 279, 283, 927 P.2d 995, 997).  Moreover, in a summary judgment proceeding, the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences will be drawn therefrom in favor of the party opposing summary judgment.  *Oliver*, ¶ 22 (citing *Joyce v. Garnaas*, 1999 MT 170, ¶ 8, 295 Mont. 198, ¶ 8, 983 P.2d 369, ¶ 8).

¶14  In addition, we review decisions of the Workers' Compensation Court to determine whether that court correctly interpreted the law as it applies to the facts of the case.  *Lockhart v. New Hampshire Ins. Co.*, 1999 MT 205, ¶ 13, 295 Mont. 467, ¶ 13, 984 P.2d 744, ¶ 13 (citing *Pinyerd v. State Compensation Ins. Fund* (1995), 271 Mont. 115, 119, 894 P.2d 932, 934).

**Issue 1.**

¶15  *Whether § 39-71-401(3), MCA, as a matter of law, conclusively precludes any factual inquiry into whether an employer/employee relationship exists once the worker has been issued the exemption contemplated by § 39-71-401(3), MCA.*

¶16  The statutes in effect on the day of an injury determine the benefits to which an injured worker is entitled.  *Buckman v. Montana Deaconess Hosp.* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382 (citations omitted).  Because Mathews was injured on June 8, 2000, the 1999 Workers' Compensation Act controls.

¶17  Mathews argues on appeal that the Workers' Compensation Court erred when it held

5

that the mere existence of an exemption conclusively precludes a worker from coverage under the Act. Mathews contends that § 39-71-401(3), MCA, does not apply to his employment by BJS because, by its own terms, § 39-71-401(3), MCA, applies only to a sole proprietor, a working member of a partnership, a working member of a limited liability partnership, or a working member of a member-managed limited liability company. He argues that it is clear that he was not any of those things because he was not engaged in an independent business at the time he worked for BJS and because he was subject to the control and direction of Brian Schroeder while he worked for BJS. Mathews also argues that, based on the express language of the exemption itself, BJS had the affirmative obligation to establish that Mathews was engaged in an independently established business and that Mathews was free and would continue to be free from the control and direction of another.

¶18    The provision of the Act at issue in this case, § 39-71-401(3), MCA (1999), provides, in pertinent part:

> (a)  A sole proprietor, a working member of a partnership, a working member of a limited liability partnership, or a working member of a member-managed limited liability company who represents to the public that the person is an independent contractor shall elect to be bound personally and individually by the provisions of compensation plan No. 1, 2, or 3 but may apply to the department for an exemption from the Workers' Compensation Act.
> (b)  The application must be made in accordance with the rules adopted by the department. . . .
> (c)  When an application is approved by the department, it is conclusive as to the status of an independent contractor and precludes the applicant from obtaining benefits under this chapter.
> (d)  The exemption, if approved, remains in effect for 3 years following

6

the date of the department's approval. To maintain the independent contractor status, an independent contractor shall every 3 years submit a renewal application. . . .

> (e) A person who makes a false statement or misrepresentation concerning that person's status as an exempt independent contractor is subject to a civil penalty of $1,000. The department may impose the penalty for each false statement or misrepresentation. . . . .

¶19 In our recent decision in *Wild v. Fregein Construction*, 2003 MT 115, ¶ 25, ___ Mont. ___, ¶ 25, ___ P.3d ___, ¶ 25 (consolidated with the instant case for purposes of oral argument), we held that nothing in § 39-71-401, MCA, precludes a factual inquiry into whether an employer/employee relationship exists at the time a worker is hired. Indeed, we determined that an employer has a clear obligation to make at least a cursory determination of whether the worker is an IC in fact, as opposed to merely in name, before the employer can reasonably rely upon the exemption and that an employer who fails to do so, with knowledge of the facts, should not be allowed to hide behind the exemption.

¶20 We also stated in *Wild*:

> When an employer hires a worker, it is the employer that dictates whether the worker will be paid by the hour, how the worker will be controlled, whose tools are going to be used and whether the worker can be fired. Thus, the employer should be required to determine whether the person is an IC based on what the employer knows and what the parties agree to during the working relationship. If the facts change during the course of employment, then the employer should be required to reassess the situation. To do otherwise would lead to an absurd result and we have repeatedly stated that statutory construction should not lead to absurd results if a reasonable construction will avoid it.

*Wild*, ¶ 28 (citing *Chain v. Mont. DMV*, 2001 MT 224, ¶ 15, 306 Mont. 491, ¶ 15, 36 P.3d 358, ¶ 15; *Gaub v. Milbank Ins. Co.* (1986), 220 Mont. 424, 428, 715 P.2d 443, 445).

7

¶21    Accordingly, we hold that § 39-71-401(3), MCA, does not, as a matter of law, conclusively preclude any factual inquiry into whether an employer/employee relationship exists once the worker has been issued the exemption contemplated by § 39-71-401(3), MCA.

**Issue 2.**

¶22    *Whether § 39-71-401(3), MCA, read in conjunction with § 39-71-120, MCA, requires the employer to make an initial good faith inquiry of the worker to determine that he or she does, in fact, meet the control and independently established business tests before the employer employs the worker as an IC.*

¶23    Mathews argues that § 39-71-401(3), MCA, must be read in conjunction with § 39-71-120, MCA, and that the inclusion by the Department of the language from § 39-71-120, MCA, on the face of the exemption places employers on notice of their obligations under the Act. Mathews claims BJS ignored this notice and its responsibility under § 39-71-401(3), MCA, for its own benefit.

¶24    Liberty argues, on the other hand, that the two need not be read in conjunction with each other because § 39-71-102, MCA, governs disputes about whether a person without an exemption is in fact an IC and that § 39-71-401(3), MCA, governs disputes in which a person with an exemption claims to be an employee. We disagree. Liberty's solution still fails to reconcile the two statutes.

¶25    In the construction of a statute, we are "not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1-2-101, MCA;

8

*Wild*, ¶ 20 (citing *Chain*, ¶ 15; *Hanson v. Edwards*, 2000 MT 221, ¶ 19, 301 Mont. 185, ¶ 19, 7 P.3d 419, ¶ 19). We held in *Wild* that to give effect to both statutes, the two can and should be read together. *Wild*, ¶¶ 22-28.

¶26 Section 39-71-120, MCA (1999), provides:

> **Independent contractor defined.** (1) An "independent contractor" is one who renders service in the course of an occupation and:
> (a) has been and will continue to be free from control or direction over the performance of the services, both under the contract and in fact; and
> (b) is engaged in an independently established trade, occupation, profession, or business.
> (2) An individual performing services for remuneration is considered to be an employee under this chapter unless the requirements of subsection (1) are met.

The exemption includes the language from subsections (a) and (b) of this statute and cautions employers that the exemption does not relieve them of their responsibility for establishing that a person is in fact an IC. In the case *sub judice*, it is clear that had Schroeder performed an inquiry based on the facts known to him at the time he hired Mathews, he would have determined that Mathews' exemption was invalid in this situation and that Mathews was in fact an employee.

¶27 In determining whether an individual qualifies for IC status, we use a two-step process. First, it must be determined whether the "control factors" are met. To determine this, we have developed the following four-part control test: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. *Spain v. Mont. Dep't of Revenue*, 2002 MT 146, ¶ 23, 310 Mont. 282, ¶ 23, 49 P.3d 615, ¶ 23 (citing *Walling v. Hardy Constr.* (1991), 247 Mont. 441, 447, 807 P.2d 1335, 1338).

9

¶28     Second, it must be determined whether the individual is engaged in an independently established, trade, occupation, profession, or business. Unless both parts of the test are satisfied by a convincing accumulation of undisputed evidence, the worker is an employee and not an IC. *Northwest Publishing v. Montana Dep't of Labor & Indus.* (1993), 256 Mont. 360, 363, 846 P.2d 1030, 1032; *Sharp v. Hoerner Waldorf Corp.* (1978), 178 Mont. 419, 424, 584 P.2d 1298, 1301.

¶29     Schroeder testified in his deposition that all of his workers, employees and ICs alike, performed the same work, namely carpentry. Schroeder set the hours for all of his workers. He determined the break times, the lunch hours and the end of the work shift. He provided all of the workers with most of the equipment necessary to perform their jobs. Schroeder gave all of the workers instructions throughout the day while overseeing their work. And, he retained the power to fire any or all of them if they did not perform the work adequately. This factor "is strong evidence of an employer-employee status as the right to terminate the relationship without liability is not consistent with the concept of independent contractorship." *Sharp*, 178 Mont. at 425-26, 584 P.2d at 1302 (citations omitted).

¶30     In addition, Schroeder testified that BJS paid Mathews an hourly wage based on the number of hours he worked. BJS mandated that Mathews provide his hours worked in the form of a bill for services rendered. Mathews was not entitled to any other bonuses or profits. And, on at least one occasion, BJS hired Mathews out and sent him to work for another employer. BJS billed the other employer for the hours Mathews worked and paid Mathews an hourly wage for the work performed. Under *Lundberg v. Liberty Northwest Ins.*

10

*Co.* (1994), 268 Mont. 499, 503-04, 887 P.2d 156, 158-59, the fact that Mathews was not engaged in an independent business is decisive of the fact that Mathews was not an IC.

¶31     Accordingly, we hold, as we did in *Wild*, that § 39-71-401(3), MCA, read in conjunction with § 39-71-120, MCA, does require the employer to make an initial good faith inquiry of the worker to determine that he or she does, in fact, meet the control and independently established business tests before the employer employs the worker as an IC and if the employer determines the worker is an IC, to thereafter treat the worker as an IC and not as an employee as BJS treated Mathews in this case.

## Issue 3.

¶32     *Whether the public policy underlying the Act generally and as set out in § 39-71-105(1), (2) and (3), MCA, is violated when the employer offers to pay the worker a higher wage on the condition that the worker present an exemption at the time of hire.*

¶33     Mathews contends that Liberty seeks to have this Court ignore the clear and unequivocal evidence demonstrating that BJS is engaged in a scheme to defraud its competitors and customers, the workers' compensation system, unemployment insurance, taxpayers of Montana, and Mathews.   Mathews argues that BJS did not fulfill its responsibility to ensure that Mathews was employed as an IC in fact.  He maintains that BJS employed Mathews in the capacity of an employee and used Mathews' lack of sophistication as a tool to defeat its obligations under Montana law and that BJS cannot be allowed to rely on a conclusive presumption to obtain a windfall at the taxpayers' expense.

¶34     We stated in *Wild* that

> [t]he Act was designed to provide benefits to injured workers.  The Act is

11

worthless if employers are provided a means of opting out of the Act by what amounts to be a transparent sham. For an employer to give the individual being hired the choice of being an employee or an IC for an increase in pay simply encourages employers to avoid their obligations under the Act and precipitates exactly the sort of problems that § 39-71-409, MCA (prohibiting workers from waiving their rights under the Act) was designed to avoid. Furthermore, interpreting the Act to uphold this practice puts to a severe economic and competitive disadvantage those employers who, in compliance with the Act, assume their legitimate obligations under the law by hiring and paying workers according to whether they are *in fact* (and not simply in name) ICs or employees. And finally, this practice allows employers to prey on blue collar laborers, few of whom are foresighted enough (or in some cases financially able) to reject the offer of a few extra dollars per hour in order to obtain the protections of the Act that may, one day, save them and their families from financial ruin.

*Wild*, ¶ 42.

¶35    Accordingly, we hold that the public policy underlying the Act generally and as set out in § 39-71-105, MCA, is violated when the employer offers to pay the worker a higher wage on the condition that the worker present an exemption at the time of hire.

¶36    Reversed and remanded for further proceedings consistent with this Opinion.


                                                        /S/ JAMES C. NELSON


We Concur:

/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

12

Justice Jim Rice specially concurring.

¶37 I concur with the Court's holding that Mark Matthews was not exempted from workers' compensation coverage, and benefits thereunder, by the Certificate of Independent Contractor Exemption issued to him by the Department. I do so on the basis of the reasoning set forth in my concurring and dissenting opinion in *Wild v. Fregein Construction*, 2003 MT 115, ___ Mont. ___, ___ P.3d ___. However, as I did there, I dissent from the Court's statutory interpretation, because it renders § 39-71-401(3), MCA, meaningless. An employer should be able to rely upon the Department's properly issued exemption, without an obligation to independently determine whether the exemption-holder meets the statutory criteria set forth in § 39-71-120, MCA. Otherwise, the exemption, and the application process envisioned by the statute, accomplish nothing.


/S/ JIM RICE


Chief Justice Karla M. Gray joins in the concurring opinion of Justice Rice.


/S/ KARLA M. GRAY


13