No. 03-770

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 392

LINDA BELLANGER,

      Plaintiff and Appellant,

   v.

AMERICAN MUSIC CO., a Montana Corporation, and ZOLLIE KELLMAN,

      Defendants and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
                   In and for the County of Cascade, Cause No. BDV 99-1189
                   The Honorable Julie Macek, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Terry N. Trieweiler, Meloy & Trieweiler, Helena, Montana

      For Respondents:

          Susan J. Rebeck, Rebeck Crum & Sinclair, Great Falls, Montana; Steven T. Potts, Thompson Potts & Donovan, Great Falls, Montana

                             Submitted on Briefs:  April 21, 2004

                                   Decided:  December 30, 2004

Filed:

                            _____
                                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Plaintiff and Appellant Linda Bellanger (Bellanger) appeals the Eighth Judicial District Court's entry of summary judgment in favor of Defendants and Respondents American Music Co. (AMC) and Zollie Kelman (Kelman). We reverse and remand for further proceedings consistent with this Opinion.

¶2 We address the following issues on appeal:

¶3 1. Did the District Court err when it granted summary judgment in favor of AMC, holding as a matter of law Bellanger was not constructively discharged?

¶4 2. Did the District Court err when it granted summary judgment in favor of Kelman, holding that Kelman was an agent of AMC acting within the scope of his agency, and therefore could not be sued for tortious interference with the business relationship between AMC and Bellanger?

## BACKGROUND

¶5 AMC is a corporation which provides video gaming and gambling machines to local businesses in Great Falls and the surrounding area. Kelman founded AMC, but transferred ownership of the business to his children in 1989. The business is currently owned by Kelman's daughters, Abby Portney and Natalie Kelman. Kelman is a creditor of the company and owns the building in which AMC is located. Bellanger worked for AMC from October 22, 1990, through May 20, 1999.

¶6 Bellanger brought this action against AMC seeking damages for constructive discharge. She claimed the work situation created by Kelman's conduct and AMC's failure

2

to control him, caused her stomach problems, impaired her ability to function normally at work, caused her to lose sleep, and caused her concern for her physical safety. She sought damages from Kelman for tortious interference with her business relationship with AMC, alleging he treated her in such an abusive, threatening, and intimidating manner that it caused her to resign.

¶7    Bellanger cites numerous examples of Kelman's intimidating and threatening behavior that occurred in 1998 and 1999, which she documented in a journal. The most threatening incident occurred April 20, 1999, when Bellanger claims Kelman stormed into her office yelling and shaking his finger at her for giving confidential information to technicians outside the company. Per her report, he slammed his hand into her wall and threatened her by stating "it's you or me." Bellanger claims she was terrified Kelman would physically hit her the next time.

¶8    AMC and Kelman moved for summary judgment. Kelman contended that: 1) the facts alleged could not constitute constructive discharge as a matter of law; 2) Bellanger's claim against him was pre-empted by the Montana Wrongful Discharge from Employment Act (WDEA), § 39-2-901, MCA, et seq.; and that 3) since Kelman was an agent of AMC, he is privileged from claims of tortious interference. AMC's motion was based on its contention that no material fact existed as to whether AMC discharged Bellanger in violation of WDEA. On October 24, 2003, the District Court entered its Order granting both motions, concluding as a matter of law that Bellanger's claim against Kelman was not barred by WDEA, but that Bellanger had not demonstrated that the conditions of her employment were

3

sufficiently intolerable to constitute a constructive discharge, and that because Kelman was an agent of AMC, pursuant to § 28-10-103, MCA, he was privileged from a claim for tortious interference. Bellanger now appeals from this Order.

## STANDARD OF REVIEW

¶9 This Court reviews a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Motta v. Philipsburg Sch. Bd. Trs.*, 2004 MT 256, ¶ 11, 323 Mont. 72, ¶ 11, 98 P.3d 673, ¶ 11 (citation omitted). The party moving for summary judgment has the initial burden of proving there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case, and if the moving party meets that burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment in favor of the moving party. Once it is established that no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law, and this Court reviews that determination to determine whether the district court erred. *Motta*, ¶ 11. "Summary judgment is an extreme remedy which should never be substituted for a trial if a material factual controversy exists." *Matthews v. BJS Constr., Inc.*, 2003 MT 116, ¶ 13, 315 Mont. 441, ¶ 13, 68 P.3d 865, ¶ 13 (quoting *Montana Metal Blds., Inc. v. Shapiro* (1997), 283 Mont. 471, 474, 942 P.2d 694, 696).

## DISCUSSION

### ISSUE 1

4

¶10     Did the District Court err when it granted summary judgment in favor of AMC, holding as a matter of law Bellanger was not constructively discharged?

¶11     Bellanger argues that, for purposes of summary judgment, her allegations must be taken as true, and that based on her allegations, any reasonable person would find her work environment intolerable.  Bellanger asserts the District Court erroneously focused its attention on a single incident of abuse and ignored the duration, nature, and severity of Kelman's conduct and its physical and emotional impact on her.  She argues she has the legal and constitutional right to present her claims to a jury.

¶12     AMC contends Bellanger's claim is based solely on the April 20, 1999 incident and that following that incident, she experienced no further adverse contact with him.  AMC argues there was no constructive discharge because the facts were not sufficiently severe so as to constitute constructive discharge and because Kelman was not Bellanger's employer. AMC contends it was not responsible for the actions of Kelman.

¶13     Section 39-2-903(1), MCA, defines constructive discharge as "the voluntary termination of employment by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative."

¶14     This Court has recognized that whether a constructive discharge has occurred is usually a question of fact determined by the totality of the circumstances.  *Snell v. Montana-Dakota Utils. Co.* (1982), 198 Mont. 56, 65, 643 P.2d 841, 846; *Niles v. Big Sky Eyewear* (1989), 236 Mont. 455, 461, 771 P.2d 114, 118; *Kestell v. Heritage Health Care*

5

*Corp.* (1993), 259 Mont. 518, 524, 858 P.2d 3, 11; *Jarvenpaa v. Glacier Elec. Coop.* (1995), 271 Mont. 477, 484, 898 P.2d 690, 694. Summary judgment should not be awarded when a factual controversy exists; whether an employer's actions are wrongful and caused a plaintiff's resignation is generally "for the trier of fact to decide." *Jarvenpaa*, 271 Mont. at 484, 898 P.2d at 694.

¶15 Bellanger recites numerous instances of Kelman's intimidating and threatening behavior, not just one instance as AMC claims. Thus, there is conflicting evidence regarding the intolerableness of Bellanger's working environment, and it is the function of a jury, not the court, to weigh such evidence. Bellanger presented sufficient evidence to create a question of fact as to whether a reasonable person in her shoes would feel forced to resign due to intolerable working conditions. Questions of fact may not be adjudicated on motions for summary judgment. The District Court should have allowed a jury to decide if Bellanger was constructively discharged. Thus, the District Court erred when it granted AMC's motion for summary judgment. We remand with instructions to hold a trial on this issue.

## ISSUE 2

¶16 Did the District Court err when it granted summary judgment in favor of Kelman, holding that Kelman was an agent of AMC acting within the scope of his agency, and therefore could not be sued for tortious interference with the business relationship between AMC and Bellanger?

¶17 Kelman claims he is privileged from Bellanger's suit, pursuant to *Phillips v. Montana Educ. Assn.* (1980), 187 Mont. 419, 610 P.2d 154 and *Lachenmaier v. First Bank Sys., Inc.*

6

(1990), 246 Mont. 26, 803 P.2d 614, because he is an agent of AMC and because he acted in good faith and in AMC's best interest when he interacted with Bellanger. Kelman asserts Bellanger admitted he acted in good faith and that she failed to rebut his affidavit supporting his agent status.

¶18    Bellanger argues Kelman is not an ostensible agent of AMC because there was no act by AMC to lead anyone to believe Kelman was its agent. In fact, Bellanger asserts, AMC has actually denied Kelman's status as an agent. Bellanger further claims that Kelman's argument that he acted in good faith is raised for the first time on appeal. Bellanger contends there was a typographical error in the District Court pleadings which resulted in Bellanger's mistaken admission of Kelman's good faith. Bellanger disputes Kelman's claim he acted in the best interests of AMC.

¶19    The threshold question is whether Kelman was an agent of AMC. Section 28-10-103, MCA, provides:

> An agency is either actual or ostensible. An agency is actual when the agent is really employed by the principal. An agency is ostensible when the *principal* intentionally or by want of ordinary care causes a third person to believe another to be his agent who is not really employed by him.

(Emphasis added).

¶20    First, it is undisputed that Kelman is not employed by AMC. Thus, under the statute there can be no actual agency relationship. As to ostensible agency, such does not exist unless there is an act of the principal which leads a third party to believe an agency exists; it must be the principal, not the agent, who intentionally or by want of ordinary care causes

7

a third person to believe another to be his agent. *Sunset Point Pshp. v. Stuc-O-Flex Intl.*, 1998 MT 42, ¶ 22, 287 Mont. 388, ¶ 22, 954 P.2d 1156, ¶ 22; *Elkins v. Husky Oil Co.* (1969), 153 Mont. 159, 168, 455 P.2d 329, 333.

¶21 There was no evidence offered that AMC, the principal, did anything to lead Bellanger to believe Kelman was its agent. In fact, it is undisputed that AMC made it clear to Bellanger that Kelman had no managerial responsibility over her. Because Kelman is not the principal, his unsupported declaration of agency cannot, under the above statute and case law, magically transform him into AMC's agent. Given these undisputed facts, Kelman failed to carry his burden of establishing that he was an agent of AMC, and the District Court therefore erred in determining he was AMC's agent.

¶22 Absent an agency relationship between him and AMC, Kelman's claimed privilege from suit for tortious interference based on agency does not apply. Thus, we do not need to discuss the parties' further arguments regarding this issue. We remand with instructions to hold a trial on the issue of whether Kelman tortiously interfered with the business relationship between AMC and Bellanger.

## CONCLUSION

¶23 We reverse the District Court's entry of summary judgment in favor of Defendant AMC and Defendant Kelman and remand for further proceedings consistent with this Opinion.

/S/ PATRICIA O. COTTER

8

We Concur:

/S/ KARLA M. GRAY
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART

Justice Jim Rice concurring in part and dissenting in part.

¶24 I concur with the Court in reversing, under Issue 1, the summary judgment which was entered in favor of AMC, but would affirm the entry of summary judgment in favor of Defendant Kelman under Issue 2 and, therefore, dissent to that portion of the Court's holding.

¶25 An agency is ostensible "when the principal intentionally *or by want of ordinary care* causes a third person to believe another to be his agent . . . ." Section 28-10-103, MCA (emphasis added). The Court concludes that there "was no evidence offered that AMC, the principal, did anything to lead Bellanger to believe Kelman was its [ostensible] agent." *See* ¶ 21. I respectfully disagree.

¶26 First, the District Court identified evidence offered by Kelman from which it could reasonably be inferred that AMC caused, by its omission or by want of ordinary care, Bellanger to believe that Kelman was its agent:

> Defendant Kelman asserts that, at all time [sic] pertinent, he was acting as an agent of Defendant AMC with respect to AMC's dealings with Plaintiff [Bellanger]. In his affidavit, Defendant Kelman asserts that he has served as a consultant to AMC since his retirement from AMC. Kelman also asserts that as part of his consulting with AMC, he "observes the company's workforce and work [sic] with employees in an attempt to improve their work and AMC's performance.". . . Kelman's assertion and these undisputed supporting facts indicate that Kelman was at least an actual or ostensible agent of AMC with certain management and supervisory responsibilities and authority.
>
> Although Plaintiff avers that Kelman is not an agent of AMC, the Plaintiff has not supported this naked assertion with any supporting affidavits or deposition testimony. To the contrary, Plaintiff's deposition testimony actually supports and is consistent with Kelman's assertion that he was actually an agent of AMC.

10

¶27 Secondly, and more significantly, there was evidence of arguably *intentional* actions by AMC which would have caused Bellanger's belief in Kelman's agency. Abby Portney, AMC's manager, made various statements to Bellanger about Kelman's role with the company. For instance, following Kelman's statement to Bellanger that he had just hired a new employee for AMC, Portney confirmed Kelman's actions with Bellanger. Further, Portney told Bellanger that AMC would get in trouble if anyone found out that Kelman was actually participating in the management of the business and told Bellanger not to tell anyone.

¶28 Thus, Bellanger conducted herself on the belief that Kelman was AMC's agent. Consistent with her understanding that Kelman had authority over her–that is, that Kelman had the authority to fire her; that she was required to take direction from Kelman, including calling him about AMC business when he was on vacation; and that Kelman was involved in AMC's major decisions and that he was "running the company" with Portney– Bellanger reported Kelman's abusive behavior to both Portney and AMC's attorney. There would have been no need or purpose for Bellanger to report Kelman to Portney and AMC's attorney if she did not believe Kelman was acting on behalf of the company. Further, AMC's attorney responded to Bellanger by informing her that she should not be treated that way and that he would talk to Kelman about it–further evidence that AMC *intentionally* caused Bellanger to believe that Kelman was its agent. If Kelman was not AMC's agent, why would its attorney indicate any responsibility for Kelman's conduct?

11

¶29 All of this evidence, not contradicted by Bellanger, along with the evidence that AMC knowingly permitted Kelman to be on the premises and to supervise Bellanger's work, sometimes abusively, was sufficient for the District Court to conclude that, under the statute, AMC had "intentionally or by want of ordinary care" caused Bellanger to believe that Kelman was AMC's agent. I believe the evidence reveals that AMC's "want of ordinary care" with regard to Kelman's actions was rampant, and the District Court correctly concluded that Kelman's agency was communicated thereby to Bellanger. Bellanger offered nothing to refute this evidence. Indeed, her observations and understanding about Kelman's authority only bolstered Kelman's agency claim.

¶30 I would affirm the District Court's entry of summary judgment in favor of Kelman.


/S/ JIM RICE

12